IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DERRICK MORGAN, <br> A10514, <br><br>     **Plaintiff,** <br><br> vs. <br><br> LISA F. CASH, <br> DIETARY SUPERVISOR ESTER, <br> DIETARY SUPERVISOR REN, <br> M. LIVELY, <br> LIEUTENANT FRANK, <br> DAVID MITCHESS, <br><br>     **Defendants.** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    Case No. 24-cv-121-DWD <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## **MEMORANDUM & ORDER**

**DUGAN, District Judge:**

Plaintiff Derrick Morgan, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Pinckneyville Correctional Center (Pinckneyville), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Specifically, Plaintiff alleges that he was harassed at work, physically assaulted, and eventually terminated, all without cause and for racial or religious reasons. He further claims the incident was not investigated in a timely manner.

Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must

be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

According to the Complaint, on December 29, 2022, Defendant Lisa Cash became the new dietary supervisor to oversee Plaintiff at his prison job. (Doc. 1 at 7). Cash saw Plaintiff wearing a religious head dress (a kufi) and she voiced her dislike for the Muslim community. Plaintiff took the verbal remarks as an indication he should not wear his kufi to work, and he stopped doing so. On January 6, 2022, Cash verbally lashed out at Plaintiff, calling him lazy and threatening him with a ticket even though his quality of work was the same as his colleagues. On January 10, 2022, Cash repeated the verbal harassment, this time adding statements that Plaintiff might work harder if she whipped him and inviting him to work at her home cutting grass and power washing her house. Plaintiff viewed the remarks as "very racist." Cash also made remarks about his religion. Cash continued the verbal harassment on multiple occasions in the presence of anyone, including Defendants Ren, Ester, and other prison employees. No one ever participated, but they also did not reprimand or report Cash. Plaintiff alleges that harassment like this is common at Pinckneyville, and that it flourishes because most staff are related or are friends.

On January 18, 2022, Cash again threated Plaintiff and commented that he must be unable to think without his "dumb a** Al-Queda s*** on [his] head." (Doc. 1 at 8). The harassment continued on January 27, 2022. Things escalated on February 1, 2022, when

Cash summoned Plaintiff to the supervisor's office. Plaintiff began to speak with Defendant Ester when Cash lunged at him with open palms and shoved him, while yelling for him to "get the f*** out of here." Plaintiff was shocked and asked Cash why she placed her hands on him, but she twice repeated the commands for him to leave. Plaintiff tried to walk around Cash to speak with Ester, but Cash grabbed his smock and pushed him again. (Doc. 1 at 8). A non-party officer escorted Plaintiff back to his housing unit at Cash's behest.

On February 2, 2022, Plaintiff reported to work, but was then notified by Defendant Ren that he was no longer on the payroll, so he could not stay in the dietary unit. (Doc. 1 at 9). Plaintiff later learned he had been fired. Plaintiff reported his termination to his fiancé, who got word to Defendant Frank. Plaintiff was interviewed by Frank of internal affairs.

On February 13, 2022, Plaintiff filed a grievance. He also, with the assistance of a 'coalition group' (Lyon Law), forwarded his allegations to Defendant David Mitchess via letter. As of May 11, 2022, Plaintiff had not received an answer to his grievance or correspondence to Mitchess.

Plaintiff finally received a grievance response on March 3, 2023, at which time the prison found no evidence of wrongdoing by Cash. By this time, Cash had retired. (Doc. 1 at 9). Plaintiff appended a copy of the grievance to his complaint. (Doc. 1 at 13-14).

In addition to the factual narrative, Plaintiff included a "statement of claim" within which he listed each defendant by name and identified a variety of legal theories for relief. For example, he alleged Mitchess was the Warden and is sued in his official capacity for

failing to oversee subordinates, for failing to protect inmates from cruel and unusual punishment, and for failing to properly investigate the allegations after the grievance or correspondence. (Doc. 1 at 9).

As relief, Plaintiff seeks monetary compensation. He also seeks declaratory and injunctive relief, to include an investigation into compliance with employee standards within the IDOC. (Doc. 1 at 11).

Based on the allegations in the Complaint, the Court designates the following counts:

> **Claim 1:** First, Eighth, or Fourteenth Amendment violations by Defendant Cash for her conduct in harassing Plaintiff based on his religion and race, for pushing Plaintiff on February 1, 2022, and for terminating Plaintiff from his employment;
>
> **Claim 2:** Eighth Amendment failure to intervene claim by Defendant Ester for failing to stop Cash's physical assault;
>
> **Claim 3:** State law harassment claim against Cash;
>
> **Claim 4:** State law assault claim against Cash;
>
> **Claim 5:** State law defamation of character claim against Cash.

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

### **Preliminary Dismissals**

Plaintiff alleges that Defendants Mitchess and M. Lively violated his rights by failing to properly investigate or respond to the allegations in his grievance or other correspondence to the prison, but the mere mishandling of a grievance is insufficient to give rise to a § 1983 claim.  *See e.g., Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (prison grievance procedures are not mandated by the First Amendment, and the alleged mishandling of grievances by those who did not otherwise participate in underlying conduct is insufficient to state a claim.)  Thus, any claim premised on grievance responses is insufficient.  At most, Plaintiff claims that Defendant Lively participated in nepotism or cronyism by not responding to his grievance until after Defendant Cash retired, but this bald assertion is insufficient to save a claim against Lively.  Plaintiff has failed to state any valid claim against Lively so she will be dismissed.

Plaintiff further alleges that Defendant Mitchess should be held liable in his official capacity for failing to oversee subordinates or for failing to protect inmates from assaults by staff, but allegations at this high level are generally insufficient because there is no respondeat superior liability under § 1983.  *See e.g., Burks v. Raemisch,* 555 F.3d 592, 596 (7th Cir. 2009) ("Section 1983 does not establish a system of vicarious responsibility. Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of the persons they supervise.").  As to the risk of harassment or an assault, like what Plaintiff says he experienced at the hands of Cash, there is no indication that Mitchess had advance warning of Cash's propensity to harass or assault inmates, so he

had no specific opportunity to intervene. Accordingly, the Court finds that Plaintiff has failed to state a viable claim against Mitchess, and Mitchess will be dismissed.

Plaintiff has named dietary supervisor Ren as a defendant, but the only allegation against Ren is that Ren informed Plaintiff on February 2, 2022, that he was no longer on the dietary payroll. Plaintiff does not indicate that this was of Ren's doing, or that Ren did anything unlawful or wrong at all. At most, he suggests that Ren was sometimes in Cash's presence when she verbally harassed Plaintiff, but Ren and others failed to react or to report Cash. This is not sufficient to proceed, and Ren will be dismissed.

Finally, Plaintiff named Lt. Frank for his failure to properly investigate Cash's conduct, or for deliberately delaying his investigation in furtherance of nepotism or cronyism. None of these theories aligns with a basis for recovery under § 1983 premised on the violation of a constitutional right, so Lt. Frank is also dismissed.

Plaintiff seeks injunctive relief in the form of a court order directing IDOC to review compliance with employee standards, but the constitution does not require compliance with prison rules, regulations, policies, or laws, so injunctive relief of this nature is not warranted. *See e.g., Thompson v. City of Chi.*, 472 F. 3d 444, 455 (7th Cir. 2006) (Section 1983 "protects plaintiffs from constitutional violations, not violations of state laws or…departmental regulations and police practices.").

## DISCUSSION

### Claims 1, 3-5

Plaintiff's allegations against Cash encapsulate a course of verbal harassment premised on his religion and his race. Plaintiff identifies as Muslim, but he did not supply

information about his race to buttress his theories about racial harassment. A prima facie case of discrimination under the equal protection clause requires a plaintiff to establish that he "is a member of a protected class," that he "is otherwise similarly situated to members of the unprotected class," and that he "was treated differently from members of the unprotected class." *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005). Indeed, jails cannot discriminate against a particular religion "except to the extent required by the exigencies of prison administration." *Maddox v. Love*, 655 F.3d 709, 719-20 (7th Cir. 2011). Economic and safety constraints may require that the needs of inmates adhering to one faith be accommodated differently from those adhering to another, but the treatment of all inmates must be "qualitatively comparable." *Id.*

Here, Plaintiff plausibly alleges that Defendant Cash singled him out based on his religion and treated him differently than other inmates who performed the same prison job to the same quality standards. He describes ongoing verbal harassment premised on his religion, an eventual physical confrontation, and termination from his prison job. Reading the complaint broadly in his favor, he has plead a plausible claim under the Fourteenth Amendment premised on his religion. By contrast, he has not successfully pled an Equal Protection claim related to his race because he has not indicated his race, nor has he described how his race was a factor in Cash's actions relative to other inmates.

The Court considered if Plaintiff might have stated a claim under the First Amendment related to his religious exercise, but ultimately finds that he did not state a First Amendment claim premised on religion. The Free Exercise Clause of the First Amendment "prohibits the state from imposing a substantial burden on a central

religious belief or practice." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) (internal quotation marks and citation omitted).  Although Plaintiff opted to stop wearing his kufi to his dietary job to avoid Cash's ire, he does not actually suggest that Cash's conduct somehow burdened his religion, so there is no First Amendment claim.

The Court also considered if Plaintiff had claims for the verbal harassment or the physical altercation under the Eighth Amendment.  Verbal harassment generally does not rise to the level of a constitutional violation, though some harassment may be serious enough to constitute cruel and unusual punishment.  *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) (finding that verbal sexual harassment, accompanied by suggestive gestures, that created a risk both from the harasser and fellow inmates, was sufficient to proceed beyond initial review); *Brand v. Oglesby*, 2021 WL 4262447 at *1 (S.D. Ill. 2021) (finding a claim insufficient where plaintiff alleged that a guard ran into his cell, verbally threatened him, and indicated he would deploy pepper spray if plaintiff moved).  Some threats may rise to the level of cruel and unusual punishment.  *Dobbey v. Ill. Dept. of Corr.*, 574 F.3d 443, 445 (7th Cir. 2009).  "The test for what constitutes cruel and unusual punishment is an objective one.  It is not the actual fear of the victim, but what a "reasonable victim" would fear." *Id.*

Verbal harassment that targets a specific vulnerable characteristic of an offender may rise to the level of an Eighth Amendment violation.  *See e.g., Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019) (finding that verbal harassment encouraging a mentally ill inmate to commit suicide could amount to an Eighth Amendment violation).  *Hughes v. Scott*, 816 F.3d 955, 956-67 (7th Cir. 2016) (finding that calling a mentally vulnerable inmate

"ignorant," "stupid" and a "moron," accompanied by threats of retaliation was sufficient to make out an Eighth Amendment claim).

Here, there is no doubt that Cash's slew of harassment was inappropriate and should not be tolerated, but it does not rise to the level of an Eighth Amendment violation. Cash's remarks were derogatory, but they did not suggest any form of physical danger or future ill-will. Though Cash ultimately may have played a role in Plaintiff's job loss, Plaintiff does not suggest that Cash foreshadowed this in her campaign of harassment. At most, he indicates she once threated to give him a ticket, but it does not appear that this threat came to fruition. Again, the Court would not condone Cash's remarks or conduct, but it does not find that the verbal harassment described rose to the level of an Eighth Amendment violation for verbal harassment.

Likewise, Cash's physical conduct—pushing or shoving Plaintiff twice in the supervisor's office—was entirely unacceptable, but not every push or shove amounts to excessive force under the Eighth Amendment. The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (citation omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the constitution. *Graham v. Conner*, 490 U.S. 386, 396 (1989) (internal citations omitted).

Here, Plaintiff describes two brief shoves, one which caused him to stumble backwards because he was caught off guard, but he does not describe any associated injury whatsoever. While there appears to be no good faith reason for the shoves, there is no indication that the force was extreme or that it caused an injury. Therefore, the Court finds that Plaintiff has not stated an Eighth Amendment excessive force claim against Cash. However, Plaintiff also expressed a desire to proceed against Cash for common law assault, harassment, and defamation of character. Plaintiff will be allowed to pursue these state level claims in this lawsuit under an exercise of supplemental jurisdiction (28 U.S.C. § 1367(c)) for the pendency of this lawsuit. Plaintiff should be aware that if there comes a time when all federal claims are resolved short of the merits of the case, then the state law claims may then be dismissed.

**Claim 2**

Plaintiff faults Defendant Ester for failing to intervene on February 1, 2022, during the physical confrontation in the supervisor's office. A failure to intervene claim requires evidence of the following: (i) the defendant knew of the unconstitutional conduct; (ii) the defendant had a realistic opportunity to prevent the harm; (iii) the defendant failed to take reasonable steps to prevent the harm; and (iv) the plaintiff suffered harm as a result. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). As the Court concluded in relation to Defendant Cash, Plaintiff did not suffer any physical harm from Cash's shoves, so he cannot proceed against Defendant Ester for a failure to intervene in Cash's behavior. Even if Plaintiff had suffered an injury, Plaintiff's description of the quickly evolving events does not tend to suggest Ester had a reasonably opportunity to intervene, but

utterly failed to act. Ester witnessed the two enter the office area engaged in a verbal exchange (which was common by Plaintiff's standards), so Ester began to engage Plaintiff in conversation, presumably to understand what was afoot (and maybe to de-escalate the situation). Before Ester and Cash even finished speaking, and with no apparent warning, Cash lunged at Plaintiff and shoved him. As Plaintiff questioned Cash about this, he tried to navigate around her to engage again with Ester, but Cash grabbed him and pulled or shoved him a second time. Ester's initial instinct, to try to engage Plaintiff in conversation was a reasonable first step. These facts simply do not support a failure to intervene claim against Ester, and Ester will be dismissed.

Plaintiff also faults Ester for failing to report Cash or to correct Cash's conduct, but these theories do not align with a right to recovery under § 1983, so any such claim is dismissed as insufficient.

### Disposition

**IT IS HEREBY ORDERED THAT Claims 1 and 3-5** of the Complaint (Doc. 1) survive against Defendant Lisa F. Cash. By contrast, **Claim 2** against Defendant Ester is insufficient to state a claim. Plaintiff also has not presented facts sufficient to state claims against Defendants Ren, M. Lively, Lieutenant Frank, or David Mitchess. The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants Ester, Ren, Lively, Frank, and Mitchess for Plaintiff's failure to state a claim against these parties.

The Clerk of Court is **DIRECTED** to prepare for Defendant Lisa F. Cash: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of

the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not

independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

Plaintiff's Motion to Add Previous Lawsuits (Doc. 4) is **GRANTED**. Plaintiff noticed that the copy of the complaint filed with the Court omitted the backside of some of his pages, so he has supplemented the missing records at docket entry 4.

**IT IS SO ORDERED.**

Dated: March 19, 2024                                         /s *David W. Dugan*
                                                                                 _____
                                                                                 DAVID W. DUGAN
                                                                                 United States District Judge

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.